**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| FEC IP LLC, | § | Case No. 2:26-cv- |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| AMAZON.COM SERVICES LLC, | § | |
| Defendant. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff FEC IP LLC ("FEC" or "Plaintiff") files this Complaint against Defendant Amazon.com Services LLC ("Amazon" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1. FEC is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 E Houston Street, Suite 140, Marshall, Texas 75670.

2. Defendant Amazon.com Services LLC ("Amazon") is a Delaware limited liability company, with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com Services LLC is a wholly-owned subsidiary of Amazon.com, Inc. Amazon.com Services LLC is registered to do business in the State of Texas and may be served with process via its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 7th Street, Suite 620, Austin, Texas 78701. Amazon.com Services LLC is the entity that owns and operates the Amazon.com website, Prime Video, Amazon

Alexa, and Amazon Fire TV.

3. Amazon conducts business operations within the Eastern District of Texas.

4. Amazon.com Services LLC leases and operates the Amazon FTW3/FTW4 and STX8 fulfillment centers located within this District.

5. Amazon has a regular and established place of business in this District, including at least its Amazon Robotics Fulfillment Center FTW3/FTW4 located at 15201 Heritage Parkway, Fort Worth, Texas 76177 and at the Sub-Same Day Fulfillment Center STX8 located at 3501 Research Drive, Richardson, Texas 75082.

## JURISDICTION

6. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. Amazon is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Amazon's substantial business in the State of Texas and in this District, including through employing more than 89,000 full- and part-time employees at fifty (50) fulfillment and sortation centers, thirty-three (33) delivery stations, an Air Gateway, thirty-six (36) Whole Foods Market locations, three (3) Amazon Hub Locker+ locations, six (6) Prime Now fulfillment centers, an Amazon Pharmacy, a Prime Air drone delivery center, three (3) wind farms, thirteen (13) solar farms, seven (7) on-site solar locations, and an Amazon Original series filmed in the State of Texas: Panic.[1]

[1] *See Investing in the U.S.*, AboutAmazon.com Website, available at: https://www.aboutamazon.com/investing-in-the-u-s

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Defendant Amazon is registered to do business in the State of Texas, has offices in the State of Texas, has transacted and continues to transact business in the Eastern District of Texas, and has committed and continues to commit acts of direct and indirect infringement in the Eastern District of Texas.

9. Amazon has regular and established places of business in this District and has committed and continues to commit acts of infringement in this District including, but not limited to: 15201 Heritage Parkway, Fort Worth, Texas 76177; 1101-1107 East 15th Street, Plano, Texas 75074; 1809 West Frankford Road, Suite 160, Carrollton, Texas; 4800 Henrietta Creek Road, Fort Worth, Texas; 3501 Research Drive, Richardson, Texas 75082; 16399 Gateway Path, Frisco, Texas 75033; 1398 Industrial Boulevard McKinney, Texas 75069; 3701 Litsey Road, Fort Worth, Texas 76177; 4121 International Parkway, Carrollton, Texas 75007-1907; and 1303 Ridgeview Drive, DDF1, Lewisville, Texas 75057.

10. Amazon has also committed acts of infringement in this District by commercializing, marketing, selling, distributing, testing, and servicing the Accused Products identified herein.



[2]

11. Amazon operates its business from Amazon's Robotic Fulfillment Centers located within this District, including the FTW3/FTW4 fulfillment center pictured above located at 15201 Heritage Parkway.[3] Amazon describes the Amazon Fulfillment Centers as "a symphony of people, AWS, software, and other high-tech components. The result is a coordination between ***our great employees*** and the finely-honed computer systems we've evolved for more than 20 years."[4]

---

[2] Amazon FTW3 & FTW4 Fulfillment Centers, located at 15201 Heritage Parkway, Fort Worth, Texas 76177 in the Eastern District of Texas.

[3] *See* Amazon Fulfillment Center Tour with AWS, Amazon Web Services YouTube Channel, available at: https://www.youtube.com/watch?v=8nKPC-WmLjU ("Amazon's Fulfillment Centers are wonders of automation, with AWS at their core."

[4] *Id.* at 1:21 (emphasis added).

12. Amazon has previously admitted that it employed information technology personnel at least at its Fulfillment Center in Denton County, which is in this District,[5] and likely employs information technology personnel at other Fulfillment Centers in this District.

13. Amazon relies on employees and associates, who work as agents of Amazon to perform its business within the Amazon Fulfillment Centers and Amazon locations within this District.

14. This Court has personal jurisdiction over Amazon. Amazon has conducted and continues to conduct business within the State of Texas. Amazon, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, makes, uses, offers for sale, sells, imports, and/or advertises (including by providing an interactive web page) its products and/or services in the United States and the Eastern District of Texas and/or contributes to and actively induces its customers to ship, distribute, make, use, offer for sale, sell, import, and/or advertise (including the provision of an interactive web page) infringing products and/or services in the United States and the Eastern District of Texas. Amazon, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that those products will be purchased and used by customers and/or consumers in the Eastern District of Texas. These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or

[5] *See JumpSport, Inc. v. Amazon.com, Inc.*, No. 6:17-cv-00666-RWS-JDL, Dkt. 13, ¶ 20 (E.D. Tex. Feb. 12, 2018) ("Amazon admits that it employs information technology personnel at its fulfillment center in Denton County. Amazon denies the remaining allegations in Paragraph 20 of the Complaint."); *see also Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123-JRG, Dkt. 226, ¶ 8 (E.D. Tex. July 31, 2020) ("Amazon admits that subsidiaries of Amazon.com, Inc. operate a fulfillment center in this district.").

imported by customers and/or consumers in the Eastern District of Texas. Amazon has committed acts of patent infringement within the Eastern District of Texas. Amazon interacts with customers in Texas, including through visits to customer sites in Texas. Through these interactions and visits, Amazon directly infringes the patents-in-suit.

15. Amazon has minimum contacts with this District, such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice. Thus, the Court therefore has both general and specific personal jurisdiction over Amazon.

## PATENTS-IN-SUIT

16. On December 8, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,631,192 (the "'192 Patent") entitled "Network Apparatus for Accessing Services Over a Network." A true and correct copy of the '192 Patent is attached as Exhibit A.

17. On December 9, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,908,106 (the "'106 Patent") entitled "Mobile Terminal." A true and correct copy of the '106 Patent is attached as Exhibit B.

18. On June 28, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,375,254 (the "'254 Patent") entitled "Control Apparatus." A true and correct copy of the '254 Patent is attached as Exhibit C.

19. On January 1, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,171,847 (the "'847 Patent") entitled "Information Device and Distribution Device." A true and correct copy of the '847 Patent is attached as Exhibit D.

20. FEC is the sole and exclusive owner of all right, title, and interest to and in the '192, '106, '254, and '847 Patents (collectively, the "Patents-in-Suit"), and holds the exclusive

right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. FEC also has the right to recover all damages for past infringement of the Patents-in-Suit as appropriate under the law.

21. FEC has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

## FACTUAL ALLEGATIONS

22. The Patents-in-Suit generally cover systems and methods for video streaming and content sharing by associating multiple electronic devices.

23. The ’192 Patent generally relates to a network apparatus and method for controlling visual display data on one electronic device with a display through another electronic device with a display. For example, a remote controller device sends its own ID code when specifying an access destination to a main device, and upon receipt of an access command from the remote controller device, the main device appends the ID code of the remote controller device to information obtained by accessing the access destination and outputs the same. The remote controller device takes in the output only when it is appended with its own ID code and displays the same on a display unit. Thus, the user can confirm the information the main device has obtained from the network on the display unit of the remote controller device. Consequently, the risk that the information is seen by anyone around can be reduced, thereby making it possible to improve the security on the private information. The inventions described in the ’192 Patent were developed by Masahiro Matsuo.

24. The ’106 Patent generally relates to a mobile terminal for turning on an external device upon opening a digital application on the mobile terminal. For example, a mobile device stores a TV application for serving as a remote control capable of controlling a TV receiver. The

mobile device starts the process of starting the TV application and transmits, to the TV receiver, control signals to turn on the TV receiver before the TV application has been started. More particularly, the mobile device transmits the control signals to turn on the TV receiver while performing the process of starting the TV application. When the mobile device has started the TV application and then the TV receiver has been turned on in normal mode, a user can control the TV receiver by using the mobile device. The inventions described in the ’106 Patent were developed by Masaki Mori.

25. The ’254 Patent generally relates to a control apparatus for segmentation of data files and playback functionality for segments of video data files. For example, a control apparatus is connected to a server device storing content and to a playback device, and controls playback of the content at the playback device. The control apparatus includes a receiver that receives the content from the server device, and a controller that transmits to the playback device information about a first playback position in the content received by the receiver. The inventions described in the ’254 Patent were developed by Makoto Takemoto, Makoto Imagawa, Shinichi Toge, Kanji Imanishi, and Masatoshi Miyoshi.

26. The ’847 Patent generally relates to an information device for downloading video data through sequentially downloaded divided video data files. For example, an information device is provided that includes a communication component and a controller. The communication component communicates with an external device. The controller downloads video data from the external device through the communication component. The controller performs processing for playing the video data. The controller executes an application for playing the downloaded video data. The controller sends a download request for each divided video data, with the divided video data being obtained by dividing up the video data. The inventions described in the ’847 Patent

were developed by Yoshinobu Imoto, Yoshikazu Fujita, Eiji Nakata, Ryuji Ikeda, Masahito Teraoka, Kanji Imanishi, Makoto Takemoto, Makoto Imagawa, Shinichi Toge, and Masatoshi Miyoshi.

27. Upon information and belief, Amazon has had knowledge and notice of the Patents-in-Suit and its infringement thereof, since they issued. Amazon was a direct competitor to Funai Electronic Co., Ltd., a prior owner of the Asserted Patents and, upon information and belief, monitored or was otherwise aware of its patented inventions, including due to their impact on Funai Electronic Co., Ltd. and Amazon's market position. Alternatively, to the extent that Amazon avoided actual knowledge of the Patents-in-Suit, and its infringement thereof, it was willfully blind. Upon information and belief, to the extent it lacked actual knowledge of infringement, Amazon deliberately avoided learning of infringement, despite subjectively believing that there was a high probability that it infringed Funai Electronic Co., Ltd. or FEC's patents, and specifically the Patents-in-Suit. Upon information and belief, Amazon has adopted a policy or practice of not reviewing the patents of others, including those related to Amazon's specific industry and of Funai Electronic Co., Ltd. in particular, thereby remaining willfully blind to the Patents-in-Suit. Upon information and belief, Amazon lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Amazon, and lacks mechanisms for employees to report patents which they believe Amazon may infringe. Upon information and believe, Amazon and its employees understood that there was a high likelihood that patents filed on innovations by Funai Electronic Co., Ltd. read on the Accused Products based on their widely publicized R&D programs, and competitor status.

28. Defendant has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell,

offer to sell, and/or import products, including mobile phones, tablets, smart watches, Amazon Streamers, the Amazon Cast app, the Amazon Home app, the Amazon TV app, the Amazon Meet app, and the YouTube TV app that implement the technology claimed by the Patents-in-Suit.

29. Defendant has had actual notice of the Asserted Patents, at least as of the filing date of this Complaint.

30. FEC has, at all times, complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents.

**COUNT I**
**(Infringement of the '192 Patent)**

31. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

32. FEC has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '192 Patent.

33. Defendant has and continues to directly infringe the claims of the '192 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '192 Patent, and by performing each and every step of one or more method claims of the '192 Patent.

34. The Accused Products each perform the method of at least Claim 17 of the '192 Patent: A method for accessing information over a network, comprising: sending a request for information from a portable remote controller device having a first display to a main device configured to be connected to a second display; obtaining the requested information from the network; providing the obtained information from the main device to the remote controller device; displaying the sent information on the first display of the remote controller device; sending a

display switching signal from the remote controller device to the main device; and determining whether the second display of the main device displays the obtained information based on the display switching signal sent from the remote controller device.

35. The Accused Products perform a method for accessing information over a network, comprising: sending a request for information from a portable remote controller device having a first display to a main device configured to be connected to a second display. For example, the Amazon Alexa Tablet 12 Pro performs a method for accessing information (e.g., streaming data) over a network (e.g., GGC, Wi-Fi, Internet, and/or Bluetooth) by sending a request for information (e.g., a request for online content, connection information, passcode prompts, channel information, video data, and/or audio data) as a portable remote controller device having a first display (e.g., touch display screen on the Amazon Alexa Tablet 12 Pro) to a main device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick) configured to be connected to a second display (e.g., screen on Amazon Ember Smart TV).



[6]



[7]

---

[6] https://www.amazon.com/b/?node=221942416011&ref_=mars_byline_alexa_tablet

[7] *Id.*



[8]



[9]

[8] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp
[9] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback

36. The Accused Products perform obtaining the requested information from the network. For example, the Amazon Alexa Tablet 12 Pro with Amazon's Fire TV mobile application obtains requested information (e.g., online content, connection information, passcode prompts, channel information, video data, and/or audio data) from the network (e.g., GGC, Wi-Fi, internet, and/or Bluetooth).



[10]

[10] https://www.amazon.com/b/?node=221942416011&ref_=mars_byline_alexa_tablet



[11]



[12]

---

[11] *Id.*
[12] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback



[13]



[14]

37. The Accused Products perform providing the obtained information from the main device to the remote controller device and displaying the sent information on the first display of the remote controller device. For example, the Amazon Alexa Tablet 12 Pro receives the information from the main device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick) and displays the sent information on the first display of the remote controller device (e.g., touch display screen on the Amazon Alexa Tablet 12 Pro), *e.g.*, via switching stream or screen mirroring (e.g., Miracast).

---

[13] https://www.amazon.com/b?ie=UTF8&node=216752230011
[14] *Id.*



15



# Screen Mirror with Your Fire Tablet

Display your Fire tablet screen (FOS 8 and higher) and audio on compatible Miracast enabled devices.

Before you mirror the screen of your Fire tablet, make sure that your Miracast enabled device is turned on and discoverable. Refer to the user guide that came with the device for details.

1. From your Fire tablet, swipe down from the top of the screen.
2. Select **Screen Mirroring** from the Quick Settings.
   - Within **Settings**, select **Connected Devices**, then select **Screen Mirroring**.
3. Tap the name of your Miracast enabled device. This initial connection may take up to 20 seconds.

To stop displaying the screen, swipe down from the top of the screen, and tap **Screen Mirroring** again.
16

[15] https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-cube.html
[16] https://www.amazon.com/gp/help/customer/display.html?ref_=hp_gcs_csd_d2_000_3_TGc24BTrmjlhHW9Nnr_gWFQgxZL6F&nodeId=TGc24BTrmjlhHW9Nnr&qid=1793221293649&sr=3

38. The Accused Products perform sending a display switching signal from the remote controller device to the main device. For example, the Amazon Alexa Tablet 12 Pro sends a display switching signal (e.g., to stream to the main device and/or mirror a display on the main device) from the remote controller device (e.g., the Amazon Alexa Tablet 12 Pro) to the main device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick).



17






18

[17] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp
[18] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback

# Screen Mirror with Your Fire Tablet

Display your Fire tablet screen (FOS 8 and higher) and audio on compatible Miracast enabled devices.

Before you mirror the screen of your Fire tablet, make sure that your Miracast enabled device is turned on and discoverable. Refer to the user guide that came with the device for details.

1. From your Fire tablet, swipe down from the top of the screen.
2. Select **Screen Mirroring** from the Quick Settings.
    - Within **Settings**, select **Connected Devices**, then select **Screen Mirroring**.
3. Tap the name of your Miracast enabled device. This initial connection may take up to 20 seconds.

To stop displaying the screen, swipe down from the top of the screen, and tap **Screen Mirroring** again. [19]

39. The Accused Products perform determining whether the second display of the main device displays the obtained information based on the display switching signal sent from the remote controller device. For example, the Amazon Alexa Tablet 12 Pro determines whether the second display (e.g., screen on Amazon Ember Smart TV) connected to the main device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick) displays obtained information (e.g., online content, connection information, passcode prompts, channel information, video files, etc.) based on the display switching signal sent from the remote controller device (e.g., the Amazon Alexa Tablet 12 Pro).

[19] https://www.amazon.com/gp/help/customer/display.html?ref_=hp_gcs_csd_d2_000_3_TGc24BTrmjlhHW9Nnr_gWFQgxZL6F&nodeId=TGc24BTrmjlhHW9Nnr&qid=1793221293649&sr=3



[20]



[21]

[20] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback

[21] https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-cube.html

# Screen Mirror with Your Fire Tablet

Display your Fire tablet screen (FOS 8 and higher) and audio on compatible Miracast enabled devices.

Before you mirror the screen of your Fire tablet, make sure that your Miracast enabled device is turned on and discoverable. Refer to the user guide that came with the device for details.

1. From your Fire tablet, swipe down from the top of the screen.
2. Select **Screen Mirroring** from the Quick Settings.
    - Within **Settings**, select **Connected Devices**, then select **Screen Mirroring**.
3. Tap the name of your Miracast enabled device. This initial connection may take up to 20 seconds.

To stop displaying the screen, swipe down from the top of the screen, and tap **Screen Mirroring** again.[22]

40. Defendant has and continues to indirectly infringe one or more claims of the ’192 Patent by inducing infringement by others, such as Defendant’s customers and end-users, in this District and elsewhere in the United States. For example, Defendant’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the ’192 Patent. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.[23]

41. Because of Defendant’s inducement, Defendant’s customers and end-users use the

---

[22] https://www.amazon.com/gp/help/customer/display.html?ref_=hp_gcs_csd_d2_000_3_TGc24BTrmjlhHW9Nnr_gWFQgxZL6F&nodeId=TGc24BTrmjlhHW9Nnr&qid=1793221293649&sr=3

[23] *See, e.g.*, https://www.amazon.com/gp/help/customer/display.html?nodeId=ToUjwyfVuffzVfbR6b

Accused Products in a way Defendant intends and they directly infringe the ’192 Patent. Defendant performs these affirmative acts with knowledge of the ’192 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’192 Patent.

42. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’192 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the ’192 Accused Products in this District and elsewhere in the United States and causing the ’192 Accused Products to be manufactured, used, sold, and offered for sale contribute to others’ use and manufacture of the Accused Products, such that the ’192 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the ’192 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’192 Patent. Defendant performs these affirmative acts with knowledge of the ’192 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’192 Patent.

43. Because of Defendant’s direct and indirect infringement of the ’192 Patent, FEC has suffered damages in an amount to be proven at trial.

## COUNT II
**(Infringement of the ’106 Patent)**

44. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein. FEC has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’106 Patent.

45. Defendant has and continues to directly infringe the claims of the ’106 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products and actively inducing others to make, use, sell, offer to sell, and/or import products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the ’106 Patent, and by performing each and every limitation of one or more method claims of the ’106 Patent.

46. The Accused Products each comprise the apparatus of at least Claim 1 of the ’106 Patent: a mobile terminal comprising: a signal transmission unit which transmits control signals to an external device; an operation unit for a user to perform various actions; and a microprocessor that starts a control application for control of the external device, and transmits, to the external device, an operation control signal based on remote control function of the control application, in response to a user action on the operation unit by using the signal transmission unit, wherein when starting the control application, the microprocessor transmits, to the external device, a turning-on control signal to turn on the external device by using the signal transmission unit before the process of starting the control application is completed.

47. The Accused Products comprise a mobile terminal comprising a signal transmission unit which transmits control signals to an external device. For example, the Amazon Alexa Tablet 12 Pro comprises a signal transmission unit (e.g., Wi-fi transceiver, Bluetooth transceiver, etc.) which transmits control signals (e.g., play, pause, volume up/down, power on/off, select, etc.) to

an external device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick, etc.).

**Product specifications**

**Amazon Alexa Tablet 12 Pro**

Design details | Measurements | Display | Camera | Performance | Audio | Power | **Connectivity**

| | |
|---|---|
| Bluetooth | Bluetooth 5.3 LE |
| Ports | USB-C port with support for:<br>• Charging<br>• Audio<br>• DisplayPort<br>• Data: USB 3.2 Gen 1 (up to 5Gbps) |
| Wi-Fi | Wi-Fi 6E (802.11 a/b/g/n/ac/ax) |

[24]



[25]

[24]https://www.amazon.com/dp/B0DT2G69GW?ref_=amzdv_esc_bn_clk_221942416011_X_d_B0DT2G69GW_1&th=1

[25] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback



[26]

48. The Accused Products comprise an operation unit for a user to perform various actions. For example, the Amazon Alexa Tablet 12 Pro comprises an operation unit (e.g., touch screen, volume buttons, etc.) for a user to perform various actions (e.g., swipe or select digital switch, button, or option).

[26] https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-cube.html



[27]

[27] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback



[28]

49. The Accused Products comprise a microprocessor that starts a control application for control of the external device, and transmits, to the external device, an operation control signal based on remote control function of the control application, in response to a user action on the operation unit by using the signal transmission unit. For example, the Amazon Alexa Tablet 12 Pro comprises a microprocessor (e.g., MediaTek Dimensity 8400 4nm 8-core CPU (Arm Cortex-A725)) that starts a control application (e.g., Amazon Fire TV mobile application, Amazon Home) for control of the external device (e.g., Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick, etc.), an operation control signal based on remote control function of the control application (e.g., a Wi-Fi signal to show display, change channel, make selection, etc.), in response to a user action on the operation unit (e.g., the user tapping or sliding across the touch screen) by using the signal transmission unit).

[28] https://www.amazon.com/dp/B0DT2G69GW?ref_=amzdv_esc_bn_clk_221942416011_X_d_B0DT2G69GW_1&th=1

**Product specifications**
**Amazon Alexa Tablet 12 Pro**

Design details | Measurements | Display | Camera | **Performance** | Audio | Power | Connectivity | Alexa | Software | Services | Accessibility

| | |
|---|---|
| GPU | 7-core GPU (Arm Mali-G720) |
| Memory & Storage options | 8GB LPDDR5X memory, 128GB UFS 3.1 storage. Available storage is less due to the operating system and pre-installed software; actual formatted capacity will vary. |
| NPU | 8th generation MDLA NPU for on-device AI workflows |
| Processor | MediaTek Dimensity 8400 4nm 8-core CPU (Arm Cortex-A725), up to 3.25GHz |

[29]




[30]

[29] https://www.amazon.com/dp/B0DT2G69GW?ref_=amzdv_esc_bn_clk_221942416011_X_d_B0DT2G69GW_1&th=1

[30] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback



[31]



[32]

[31] https://www.amazon.com/b?ie=UTF8&node=216752230011
[32]https://www.amazon.com/dp/B0DT2G69GW?ref_=amzdv_esc_bn_clk_221942416011_X_d_B0DT2G69GW_1&th=1

50. The Accused Products comprise a mobile terminal wherein when starting the control application, the microprocessor transmits, to the external device, a turning-on control signal to turn on the external device by using the signal transmission unit before the process of starting the control application is completed. For example, on information and belief, when a user begins the startup process of the control application (e.g., Amazon Fire TV mobile application, Amazon Home), the Amazon Alexa Tablet 12 Pro transmits to the external device (Amazon Fire TV Cube, Amazon Ember Smart TV, Amazon Fire Stick, etc.) a turning-on control signal (e.g., a screensaver wake signal) to activate and turn on the external device before the process of starting the control application is completed.

## Sponsored Screensaver

Sponsored Screensaver is a full-screen ad placement integrated with the original landscape image screensaver experience on Fire TV. It is only available to media and entertainment advertisers with the exception of sponsorships.

## Experience overview

After a period of inactivity, Fire TV shows a screensaver that is led by full screen promotional images. Each image shows for 30 seconds. Customers can view more details of the ad by pressing the Play or Pause button on their remote controls. They can also use the left or right buttons to browse other promotions and screensaver images. After all ads have been shown, landscape images are displayed for the remainder of the screensaver session.[33]

51. Defendant has and continues to indirectly infringe one or more claims of the ’106 Patent by inducing infringement by others, such as Defendant’s customers and end-users, in this District and elsewhere in the United States. For example, Defendant’s customers and end-

[33] https://advertising.amazon.com/resources/ad-specs/fire-tv/screensaver

users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the ’106 Patent. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.[34]

52. Because of Defendant’s inducement, Defendant’s customers and end-users use the Accused Products in a way Defendant intended and they directly infringe the ’106 Patent. Defendant performs these affirmative acts with knowledge of the ’106 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’106 Patent.

53. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’106 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the ’106 Accused Products in this District and elsewhere in the United States and causing the ’106 Accused Products to be manufactured, used, sold, and offered for sale contribute to others’ use and manufacture of the Accused Products, such that the ’106 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the ’106 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’106 Patent. Defendant performs

[34] *See*, *e.g.*, https://www.amazon.com/gp/help/customer/display.html?nodeId=ToUjwyfVuffzVfbR6b

these affirmative acts with knowledge of the ’106 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’106 Patent.

54. Because of Defendant’s direct and indirect infringement of the ’106 Patent, FEC has suffered damages in an amount to be proven at trial.

**COUNT III**
**(Infringement of the ’254 Patent)**

55. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

56. FEC has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’254 Patent.

57. Defendant has and continues to directly infringe the claims of the ’254 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the ’254 Patent.

58. The Accused Products comprise the elements of at least Claim 1 of the ’254 Patent: a control apparatus that is connected to a server device storing content and to a playback device, and controls playback of the content at the playback device, the control apparatus comprising: a receiver that receives the content from the server device; an analyzer that process at least one of video and audio of the content received by the receiver to determine a position of a chapter in the content; a determination component that determines a first playback position in the content based on the position of the chapter determined by the analyzer; and an electric controller that transmits to the playback device information about the first playback position in the content, the controller transmitting to the server device a content request for requesting the server device to send the content to the control apparatus in response to transmitting a playback instruction to the playback

device to play the content at the playback device, the receiver receiving the content from the server device in parallel to the playback device receiving the content from the server device without going through the control apparatus in response to the playback instruction from the control apparatus, the analyzer processing the at least one of the video and audio of the content that has been received in response to the controller transmitting the content request to determine the position of the chapter in the content in parallel to the playback device playing the content that has been received from the server device without going through the control apparatus in response to the playback instruction from the control apparatus, the chapter including a first chapter and a second chapter, the analyzer detecting a start position and an end position of a segment that satisfies a predetermined condition in the content as a position of the first chapter and a position of the second chapter, and the controller transmitting to the playback device the position of the second chapter as the information about the first playback position when information about a playback position of the content at the playback device received by the receiver matches the position of the first chapter.

59. The Accused Products comprise a control apparatus that is connected to a server device storing content and to a playback device, and controls playback of the content at the playback device. For example, the Accused Products comprise a control apparatus (e.g., Amazon Fire TV mobile application and/or a device running the Amazon Fire TV mobile application, Amazon Prime Video mobile application, YouTube TV app, and/or a device running the YouTube TV app) that is connected to a server device (e.g., Amazon's servers, Amazon's cloud server, etc.) storing content (e.g., videos files, livestreams, etc.) and to a playback device (e.g., smart television, mobile device, etc.), and controls playback of the content at the playback device.



[35]

60. The Accused Products comprise a receiver that receives the content from the server device. For example, the Amazon Fire TV mobile application includes a receiver component that is responsible for fetching streaming content. The receiver obtains video and audio streams from Amazon's content delivery network servers.



[36]

---

[35] https://www.amazon.com/b?ie=UTF8&node=216752230011

[36] *Id.*



[37]



[38]

---

[37] https://play.google.com/store/apps/details?id=com.amazon.storm.lightning.client.aosp; *see also* https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback

[38] https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback

61. The Accused Products comprise an analyzer that processes at least one of video and audio of the content received by the receiver to determine a position of a chapter in the content. For example, Amazon Prime Video content running on Amazon Fire TV comprises an analyzer that determines the duration of a credits section of a television show in case a user would like to skip the credits and move on to upcoming content.



[39]



[40]

---

[39] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
[40] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

62. The Accused Products comprise a determination component that determines a first playback position in the content based on the position of the chapter determined by the analyzer. For example, Amazon Prime Video content running on Amazon Fire TV comprises an analyzer that determines a first playback position (e.g., timestamp) in the content (e.g., video file, audio file, etc.) based on the position of the chapter determined by the analyzer (e.g., the beginning and ending of a show's credit sequence).



[41]

[41] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box



[42]

63. The Accused Products comprise an electric controller that transmits to the playback device information about the first playback position in the content. For example, in the Amazon Prime Video content running on the Amazon Fire TV mobile application, an electric controller is responsible for transmitting playback-related metadata (e.g., a flag indicating whether the "Up Next" feature is available for the current title, along with a first playback position, such as the timestamp marking the end of the credit section, or the timestamp for the beginning of the next video file, to which the playback should jump) to the playback device.

[42] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken



[43]



[44]

64. The Accused Products comprise the controller transmitting to the server device a content request for requesting the server device to send the content to the control apparatus in response to transmitting a playback instruction to the playback device to play the content at the playback device. For example, when a user initiates playback of a selected title, the control apparatus (e.g., Amazon Fire TV mobile application and/or a device running the Amazon Fire TV

[43] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
[44] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

mobile application, Amazon Prime Video mobile application, YouTube TV app, and/or a device running the YouTube TV app) comprises a controller that sends a playback instruction to the playback device to begin streaming. In response to this instruction, the controller also transmits content to the server device (e.g., Amazon's servers, Amazon's cloud server, etc.) asking the server to deliver the corresponding video and audio segments required for playback. These content segments are streamed from the server device to the control apparatus and/or playback device.



[45]

[45]https://www.amazon.com/dp/B00ODIASKC?lv=shuf&channelId=500&plpRedirect=mhFallback



46



47

65. The Accused Products comprise the receiver receiving the content from the server device in parallel to the playback device receiving the content from the server device without going through the control apparatus in response to the playback instruction from the control apparatus. For example, when content playback is initiated, the control apparatus (e.g., Amazon Fire TV mobile application and/or a device running the Amazon Fire TV mobile application, Amazon

[46] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
[47] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

Prime Video mobile application, YouTube TV app, and/or a device running the YouTube TV app) sends a playback instruction to begin streaming. In response, the receiver fetches playback-related metadata and manifest files directly from part of the server device (e.g., Amazon's servers, Amazon's cloud server, etc.). Simultaneously, the playback device receives the actual media content video and audio chunks from Amazon's servers. By way of further example, features like "Up Next" continue to function in the background of the Amazon Fire TV mobile application, showing that parallel processing is active while content is being streamed.



[48]

[48] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box



[49]

66. The Accused Products comprise the analyzer processing the at least one of the video and audio of the content that has been received in response to the controller transmitting the content request to determine the position of the chapter in the content in parallel to the playback device playing the content that has been received from the server device without going through the control apparatus in response to the playback instruction from the control apparatus. For example, when a user taps "Play" in the Amazon Fire TV mobile application, the control apparatus (e.g., Amazon Fire TV mobile application and/or a device running the Amazon Fire TV mobile application, Amazon Prime Video mobile application, YouTube TV app, and/or a device running the YouTube TV app) sends a content request to Amazon's backend servers. In response, the playback device begins receiving video and audio streams from the server device, without routing through the Amazon Cast control logic. Playback starts nearly instantly. Simultaneously, on information and belief, the "Up Next" analyzer begins working in the background to process the video and audio. The analyzer determines the position of the chapter in the content (e.g., determine the credit segment boundaries). This analysis is conducted in parallel with content playback.

[49] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken



[50]



[51]

67. The Accused Products comprise the chapter including a first chapter and a second chapter. For example, every television episode is typically structured within Amazon Prime Video running on the Amazon Fire TV mobile application with a clearly defined credits segment, such as with theme music or contributory content. The analyzer identifies two timestamp markers: one that indicates the end of the first chapter and beginning of the second chapter (e.g., the main content

[50] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
[51] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

ends and credits begin) and another that marks the end of the second chapter (e.g., when the credits end).



[52]



[53]

68. The Accused Products comprise the analyzer detecting a start position and an end position of a segment that satisfies a predetermined condition in the content as a position of the first chapter and a position of the second chapter. For example, as mentioned above, the analyzer identifies

[52] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
[53] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

a start position and an end position of a segment, such as two timestamp markers: one that indicates the end of the first chapter and beginning of the second chapter (e.g., the main content ends and credits begin) and another that marks the end of the second chapter (e.g., when the credits end).



54



55

69. The Accused Products comprise the controller transmitting to the playback device the position of the second chapter as the information about the first playback position when

---

54 https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box
55 https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

information about a playback position of the content at the playback device received by the receiver matches the position of the first chapter. For example, as the playback on the Amazon Fire TV mobile application progresses through the episode, it continually tracks the current playback position. When this playback position aligns with the timestamp corresponding to the end of the position of the first chapter (e.g., the end of the main content section), Amazon Prime Video on the Amazon Fire TV mobile application detects this match and displays the "Up Next" button on the playback interface. If the viewer opts to skip by selecting the button, the controller sends a command to the playback device, instructing it to jump to the position of the second chapter (e.g., the credits end timestamp), bypassing the credits segment.



[56]

[56] https://www.amazonforum.com/s/question/0D56Q0000Bxx27pSQA/next-up-box



[57]

70. Defendant has and continues to indirectly infringe one or more claims of the ’254 Patent by inducing infringement by others, such as Defendant’s customers and end-users, in this District and elsewhere in the United States. For example, Defendant’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the ’254 Patent. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.[58]

71. Because of Defendant’s inducement, Defendant’s customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the ’254 Patent. Defendant performs these affirmative acts with knowledge of the ’254 Patent and with the intent, or willful

---

[57] https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken

[58] *See, e.g.,* https://www.amazonforum.com/s/question/0D54P00006zSt39SAC/hide-next-up-broken.

blindness, that the induced acts directly infringe the ’254 Patent.

72. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’254 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the ’254 Accused Products in this District and elsewhere in the United States and causing the ’254 Accused Products to be manufactured, used, sold, and offered for sale contribute to others’ use and manufacture of the Accused Products, such that the ’254 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the ’254 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’254 Patent. Defendant performs these affirmative acts with knowledge of the ’254 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’254 Patent.

73. Because of Defendant’s direct and indirect infringement of the ’254 Patent, FEC has suffered damages in an amount to be proven at trial.

## COUNT IV
## (Infringement of the ’847 Patent)

74. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

75. FEC has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’847 Patent.

76. Defendant has and continues to directly infringe the claims of the ’847 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products,

such as the Accused Products, that satisfy each and every limitation of one or more claims of the ’847 Patent.

77. The Accused Products comprise the device of at least Claim 1 of the ’847 Patent: an information device comprising: a communication component that communicates with an external device; and a controller that downloads video data from the external device through the communication component, performs processing to convert a format of the video data into a playable format and executes an application for playing the video data, the controller sending a download request for each divided video data to sequentially download the divided video data, with the divided video data being obtained by dividing up the video data, the processing by the controller to convert the format of the video data into the playable format including dividing the divided video data into a plurality of divided files and producing a playlist file for a playback instruction of the divided files every time the divided video data is downloaded.

78. The Accused Products comprise an information device. For example, the Amazon Prime Video mobile application includes information devices (e.g., Amazon ECS servers) that deliver, store, and analyze content like livestream and recorded videos and audio.




The updated architecture for monitoring a system with all components running inside a single Amazon ECS task. [59]

79. The Accused Products comprise a communication component that communicates with an external device. For example, the servers that are a part of Amazon's Elastic Container Service ("ECS") include communication components (e.g., media converters) that establish and maintain communication with edge servers or playback devices.




The updated architecture for monitoring a system with all components running inside a single Amazon ECS task. [60]

80. The Accused Products comprise a controller that downloads video data from the

[59]https://web.archive.org/web/20230505033454/https://www.primevideotech.com/video-streaming/scaling-up-the-prime-video-audio-video-monitoring-service-and-reducing-costs-by-90
[60]*Id.*

external device through the communication component, performs processing to convert a format of the video data into a playable format and executes an application for playing the video data. For example, a network controller downloads video data (e.g., a request to watch a livestream or recording) from the external device (e.g., a user device) through the communication component of Amazon's network, the controller downloads the requested content into a playable format for the external device to play the requested content.




**The updated architecture for monitoring a system with all components running inside a single Amazon ECS task.** [61]

81. The Accused Products comprise the controller sending a download request for each divided video data to sequentially download the divided video data, with the divided video data being obtained by dividing up the video data. For example, Amazon encodes each video data into small "chunks" (typically 2-6 seconds in length). The Amazon controller sends a download request for each chunk to sequentially download the chunked video data.

[61] *Id.*

A modern data streaming architecture allows you to ingest, process, and analyze high volumes of high-velocity data from a variety of sources in real-time to build more reactive and intelligent customer experiences. The modern streaming data architecture can be designed as a stack of five logical layers; each layer is composed of multiple purpose-built components that address specific requirements. The following diagram illustrates the modern streaming data architecture.




*Modern data streaming architecture on AWS* [62]

[62] https://web.archive.org/web/20261029224716/https://docs.aws.amazon.com/whitepapers/latest/build-modern-data-streaming-analytics-architectures/what-is-a-modern-streaming-data-architecture.html

The modern data streaming architecture includes the following key components:

- **Source** - Your source of streaming data includes data sources like sensors, social media, IoT devices, log files generated by using your web and mobile applications, mobile devices that generates semi-structured and unstructured data as continuous streams at high velocity.
- **Stream storage** - The stream storage layer is responsible for providing scalable and cost-effective components to store streaming data. The streaming data can be stored in the order it was received for a set duration of time, and can be replayed indefinitely during that time.
- **Stream ingestion** - The stream ingestion layer is responsible for ingesting data into the stream storage layer. It provides the ability to collect data from tens of thousands of data sources and ingest in near real-time. .
- **Stream processing** - The stream processing layer is responsible for transforming data into a consumable state through data validation, cleanup, normalization, transformation, and enrichment. The streaming records are read in the order they are produced, allowing for real-time analytics, building event driven applications, or streaming ETL.
- **Destination** - The destination layer is like a purpose-built destination depending upon your use case. Your destination can be an event driven application, data lake, data warehouse, database, or an OpenSearch.[63]

82. The Accused Products comprise the processing by the controller to convert the format of the video data into the playable format including dividing the divided video data into a plurality of divided files and producing a playlist file for a playback instruction of the divided files every time the divided video data is downloaded. For example, Amazon's ECS architecture includes caching servers that store video segments and playlists for producing playback instructions upon download.

---

[63] *Id.*

A modern data streaming architecture allows you to ingest, process, and analyze high volumes of high-velocity data from a variety of sources in real-time to build more reactive and intelligent customer experiences. The modern streaming data architecture can be designed as a stack of five logical layers; each layer is composed of multiple purpose-built components that address specific requirements. The following diagram illustrates the modern streaming data architecture.




*Modern data streaming architecture on AWS* [64]

[64] *Id.*

> The modern data streaming architecture includes the following key components:
>
> - **Source** - Your source of streaming data includes data sources like sensors, social media, IoT devices, log files generated by using your web and mobile applications, mobile devices that generates semi-structured and unstructured data as continuous streams at high velocity.
> - **Stream storage** - The stream storage layer is responsible for providing scalable and cost-effective components to store streaming data. The streaming data can be stored in the order it was received for a set duration of time, and can be replayed indefinitely during that time.
> - **Stream ingestion** - The stream ingestion layer is responsible for ingesting data into the stream storage layer. It provides the ability to collect data from tens of thousands of data sources and ingest in near real-time. .
> - **Stream processing** - The stream processing layer is responsible for transforming data into a consumable state through data validation, cleanup, normalization, transformation, and enrichment. The streaming records are read in the order they are produced, allowing for real-time analytics, building event driven applications, or streaming ETL.
> - **Destination** - The destination layer is like a purpose-built destination depending upon your use case. Your destination can be an event driven application, data lake, data warehouse, database, or an OpenSearch.[65]

83. Defendant has and continues to indirectly infringe one or more claims of the ’847 Patent by inducing infringement by others, such as Defendant’s customers and end-users, in this District and elsewhere in the United States. For example, Defendant’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the ’847 Patent. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.[66]

84. Because of Defendant’s inducement, Defendant’s customers and end-users use the

[65] *Id.*
[66] *See, e.g.*, https://www.primevideo.com/help

Accused Products in a way Defendant intends and they directly infringe the ’847 Patent. Defendant performs these affirmative acts with knowledge of the ’847 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’847 Patent.

85. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’847 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the ’847 Accused Products in this District and elsewhere in the United States and causing the ’847 Accused Products to be manufactured, used, sold, and offered for sale contribute to others’ use and manufacture of the Accused Products, such that the ’847 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the ’847 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’847 Patent. Defendant performs these affirmative acts with knowledge of the ’847 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’847 Patent.

86. Because of Defendant’s direct and indirect infringement of the ’847 Patent, FEC has suffered damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FEC prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate FEC for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that Defendant's infringement has been willful and awarding FEC treble damages pursuant to 35 U.S.C. § 284;

e. Entry of judgment declaring that this case is exceptional and awarding FEC its costs and reasonable attorney fees under 35 U.S.C. § 285; and

f. Such other and further relief as the Court deems just and proper.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*

Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Jacob Ostling
NY Bar No. 5684824
Email: jostling@frlip.com
Ryan Oliver

Texas Bar No. 24132132
Email: roliver@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF***
***FEC IP LLC***